UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                    Case No. 05-80810
                                    Hon. Lawrence P. Zatkoff

D-11, RAMANDO WELLONS,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 29TH day of January, 2013

PRESENT:   THE HONORABLE LAWRENCE P. ZATKOFF
                     UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

On December 12, 2006, Defendant was sentenced to 37 months imprisonment and three years supervised release. Although the record is not clear when Defendant's supervised release term was scheduled to expire, there is no dispute that the events described below occurred during Defendant's term of supervised release.

On November 27, 2011, Detroit Police Department ("DPD") Officer Leo Rhodes swore to an affidavit in support of a search warrant of a house on Elmira Street in Detroit. The next day, on November 28, 2011, officers executed that warrant and found, among other things, over 2,000 grams of marijuana, a digital scale, a .22 caliber handgun, and Defendant (who had possession of almost $1,000 in cash). Defendant, after waiving his *Miranda* rights, gave a

written statement admitting that the marijuana and gun were his. The case was presented to and accepted by the Wayne County Prosecutor's office for prosecution.

On August 15, 2012, the Court received from the U.S. Probation Office a Violation Report and Petition for Summons regarding Defendant. Therein, it is alleged that Defendant violated six conditions of his supervised release, all of which stem from his alleged possession of the marijuana and firearm on November 28, 2011, and his failure to report such conduct to his probation officer. The Court scheduled a supervised release hearing, which government counsel and Defendant, appearing in pro per, attended. The Court adjourned the supervised release hearing in order to have counsel appointed for Defendant.

In the meantime, Defendant's attorney in the Wayne County Circuit Court case filed a motion to suppress, arguing that the search warrant affidavit was not supported by probable cause and that the good faith exception did not apply because the affidavit was so lacking in indicia of probable cause that belief in its existence was not reasonable. As this Court recently learned, the Wayne County Circuit Court judge granted Defendant's motion to suppress the evidence and dismissed that case.

Based on a disagreement among the parties as to whether this Court could consider, for purposes of Defendant's alleged supervised release violation, the evidence suppressed by the Wayne County Circuit Court judge, the Court ordered the parties to brief the issue of whether this Court can consider the evidence that the state court suppressed. The parties have fully briefed the issue.

## II.  ANALYSIS

The law in the Sixth Circuit appears to be well-established on this issue.  Even if the state court judge was correct, the exclusionary rule would not apply here.  In *United States v. Farmer*, 512 F.2d 160, 161-162 (6th Cir. 1975), the defendant was on probation when the FBI executed a search warrant at his house and found him with gambling paraphernalia. At his probation violation hearing, the district court judge denied his request to suppress the evidence. *Id.* at 162. The Sixth Circuit affirmed, first noting that, at a probation hearing, "the defendant is not endowed with all of the rights which he possessed prior to conviction." *Id.* The Sixth Circuit agreed with those other circuits that did "not appl[y] the Fourth Amendment in revocation proceedings." *Id.* at 162-163 (citing cases).

Significantly, the decision in *Farmer* has been extended to the supervised release context. For example, in *United States v. Blackshear*, 1 F.3d 1242 (6th Cir. 1993) (unpublished), the court declined to apply the exclusionary rule to evidence that was obtained during the execution of a search warrant and rejected the defendants' request to revisit the rule of *Farmer* because of alleged differences between supervised release and probation. *Id*. See also *United States v. Montez*, 952 F.2d 854 (5th Cir.1992).

Defendant has not pointed to any case that applies the exclusionary rule to supervised release hearings. Defendant instead relies on two cases, *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), and *Oliva-Ramos v. Attorney General of the United States*, 694 F.3d 259 (3rd Cir. 2012), for the proposition that "the exclusionary rule is allowed in federal administrative proceedings … if the evidence was obtained as a result of an egregious constitutional violation."  The Supreme Court in *Lopez-Mendoza* did not, however, find that the exclusionary rule applied in that case; rather, it found that the exclusionary rule *did not apply* in that matter, an appeal from a

3

civil deportation hearing. *Lopez-Mendoza*, 468 U.S. at 1050-51. Subsequently, some courts, such as the Third Circuit in *Oliva-Ramos*, have seized on dicta in the *Lopez-Mendoza* opinion (*i.e.*, the pronouncement that the Supreme Court was "not deal[ing] … with egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained," *Lopez-Mendoza*, 468 U.S. at 1050-51) and found the exclusionary rule does apply in some "egregious" situations.

The Sixth Circuit, however, has not adopted the Third Circuit's interpretation of *Lopez-Mendoza* or otherwise applied the exclusionary rule in this context. *Cf. Miguel v. I.N.S.*, 359 F.3d 408, 411 n.3 (6th Cir. 2004) (noting that "[t]he Supreme Court in *Lopez-Mendoza* … appeared to leave open the possibility that the exclusionary rule might apply in cases involving 'egregious violations' of the Fourth Amendment" but not ruling on the issue because "even a favorable ruling for [the alien] on her motion to suppress would not change her established removability"). Thus, Defendant has not even cited any binding authority that the exclusionary rule applies in the immigration context.

Finally, the Court notes that, even if Defendant was facing a criminal prosecution, the Court would not be bound by the Wayne County Circuit Court judge's determinations about the constitutionality of the search warrant affidavit or the application of the exclusionary rule. *See, e.g., Manley v. Paramount's Kings Island*, No. 07-4539, 2008 WL 4764121, at *6 (6th Cir. Nov. 3, 2008) (explaining that a state court's determination of no probable cause to arrest is not binding on a federal court).

Accordingly, and for the reasons set forth above, the Court concludes that the exclusionary rule does not apply in the context of a supervised release violation hearing. As such, evidence associated with the November 28, 2011, search of the house on Elmira Street and

Defendant's written statement may be considered in conjunction with the supervised release conditions Defendant is alleged to have violated.

### III.  CONCLUSION

For the reasons set forth above, the Court shall hold the supervised release violation hearing on January 31, 2013, at 10:30 a.m., as previously scheduled.

IT IS SO ORDERED.

                                                S/Lawrence P. Zatkoff
                                                LAWRENCE P. ZATKOFF
                                                UNITED STATES DISTRICT JUDGE

Dated: January 29, 2013